IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ANNIE MAE ENGLISH,
    Plaintiff,

vs.                                                      Case No.: 3:14cv7/MCR/EMT

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,
      Defendant.
_____/

## REPORT AND RECOMMENDATION

       This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court pertaining to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. § 401, *et seq*. It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Acting Commissioner of the Social Security Administration ("the Commissioner of the SSA") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34.

       Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence and comport with proper legal principles. The undersigned therefore recommends that the decision of the Commissioner be affirmed.

I.   PROCEDURAL HISTORY

On November 19, 2010, Plaintiff filed an application for DIB in which she alleged disability beginning March 13, 2010 (tr. 144–50).[1]  Her application was denied initially and on reconsideration.  Thereafter, Plaintiff requested a hearing before an administrative law judge ("ALJ"), who conducted a hearing on September 12, 2012.  On October 12, 2012, the ALJ issued a decision in which he found Plaintiff "not disabled," as defined under the Act, at any time through the date of his decision (tr. 20–30).  Plaintiff then sought review by the Appeals Council ("AC").  On December 24, 2013, after considering additional evidence submitted by Plaintiff and finding no basis to review the ALJ's decision, the AC denied Plaintiff's request for review (tr. 1–6).  Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007).  This appeal followed.

II.  FINDINGS OF THE ALJ

In his October 12, 2012, decision the ALJ made the following findings (tr. 20–30):

1)   Plaintiff meets the insured status requirements of the Act through June 30, 2015.[2]

2)   Plaintiff has not engaged in substantial gainful activity since her alleged onset date of March 13, 2010.

3)   Plaintiff has the following severe impairments: post surgical degenerative joint disease of the right shoulder, obesity, cervical and lumbar degenerative disc disease, asthma, diabetes mellitus, depressive disorder, and chronic obstructive pulmonary disease.

4)   Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

---

[1] All references to "tr." refer to the transcript of the SSA record filed on March 13, 2014 (docs. 5, 6, 7). Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other source.

[2] Thus, the time frame relevant to this appeal is March 13, 2010 (date of alleged onset) through October 12, 2012 (date of ALJ's decision).

Case No.: 3:14cv7/MCR/EMT

5) Plaintiff has the residual functional capacity ("RFC") to perform a range of light work, as light work is defined in 20 C.F.R. §404.1567(b).[3]

6) Plaintiff is capable of performing her past relevant work as a telemarketer. This work does not require the performance of work related activities precluded by Plaintiff's RFC.

7) Plaintiff has not been under a disability, as defined in the Act, from March 13, 2010, through the date of the ALJ's decision.

III. STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will

---

[3] 20 C.F.R. § 404.1567(b) provides:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

In this case, the ALJ found that Plaintiff can lift/carry twenty pounds occasionally and ten pounds frequently, sit six hours in an eight-hour workday, stand four hours in an eight-hour workday, and walk four hours in an eight-hour workday for a total of eight hours on her feet. She can frequently reach (except overhead, occasionally) and continuously handle, finger, feel, and push. She is limited to no climbing of ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She can frequently understand, remember, and carry out short and simple instructions and occasionally perform those functions with respect to detailed instructions. She cannot be exposed to temperature extremes, dust, fumes, gases, and humidity (tr. 26).

not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998); Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g), the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, she is not disabled.

2. If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3. If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.     If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.     Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then prove she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

The fourth sentence of § 405(g) provides federal courts with the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." A sentence four remand may be appropriate when the claimant submits new evidence to the AC which the AC did not adequately consider in denying the claimant's request for review. Ingram, 496 F.3d at 1261. With respect to this type of remand, it must be established that, in light of the new evidence submitted to the AC, the ALJ's decision to deny benefits is not supported by substantial evidence in the record as a whole. *Id.* at 1266–67; *see also* 20 C.F.R. 404.970(b) (the AC must consider new, material, and chronologically relevant evidence and must review the case if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record"). Additionally, new evidence submitted by a claimant to the AC must relate to the period on or before the date of the ALJ's decision. *See* Wilson v. Apfel, 179 F.3d 1276, 1279 (11th Cir. 1999); 20 C.F.R. § 404.970(b) (requiring AC to consider new evidence "only where it relates to the period on or before the date of the administrative law judge hearing decision"). A sentence-four remand is unwarranted if there is no "reasonable possibility that [the new evidence] would change the administrative result." Milano v. Bowen, 809 F.2d 763, 766 (11th Cir. 1987).

IV.     DISCUSSION

Plaintiff does not point to any error by the ALJ. Rather, she only cites error by the AC, resting her argument primarily on the rationale of Flowers v. Comm'r of Soc. Sec., 441 F. App'x. 735, 746 (11th Cir. 2011) (unpublished) (remanding because AC did not articulate specific findings when considering new evidence from a treating physician, which new evidence contained an RFC assessment "that was supported by significant clinical findings from three examinations performed" by the treating physician).[4] Plaintiff states that she submitted new evidence to the AC in the form of a Physical Residual Functional Capacity ("PRFC") evaluation dated January 30, 2013, from her treating physician, Carmen De La Rosa, M.D. (tr. 441–45), but that in denying her request for review the AC failed to give any specific reasons for finding that the evidence provided no basis to change the ALJ's decision.[5] Plaintiff submits that Dr. De La Rosa's PRFC is new evidence, as it was not available to the ALJ when he issued his decision in October 2012, and it is not cumulative as it is the only PRFC of record from a treating physician that identifies restrictions on Plaintiff's ability to work. Furthermore, Plaintiff contends, the new evidence is material because it is a treating physician's opinion of Plaintiff's impairments and functional limitations that contradicts the ALJ's findings and conclusions, and it raises a reasonable possibility that it would alter the ALJ's opinion (doc. 9 at 5). Summarizing her argument, Plaintiff states

> As in *Flowers*, *supra*, the Appeals Council merely acknowledged receiving Dr. De La Rosa's assessment, but did not attempt to evaluate it. As in *Flowers*, the new evidence is a medical opinion from a treating physician that contradicts the physical RFC opinions rendered by non-examining state consultants upon whom the ALJ relied. And, as in *Flowers*, there is a reasonable possibility that the new evidence will change the administrative outcome.

---

[4] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36–2 (2005).

[5] In its order denying review, the Appeals Council stated: "In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council. We found that this information does not provide a basis for changing the Administrative Law Judge's decision." (tr. 1–2).

Case No.: 3:14cv7/MCR/EMT

(*id.* at 6). Plaintiff therefore submits that the court "must remand for a disability decision that considers this new medical evidence in conjunction with all the other evidence in the entire record." (*id.*) (citing Flowers, 441 F. App'x at 745).[6]

As an initial matter, the court notes that Plaintiff's argument is not developed with the specificity anticipated by the court's Scheduling Order (*see* doc. 8). Even if Plaintiff's argument were more fully developed and supported, however—such as with pinpoint references in the medical record to findings made by Dr. De La Rosa in her clinical notes that were correlated with her PRFC findings—as explained below, the court nevertheless concludes that reversal of this matter would not be appropriate. In a published case issued after the parties briefed this matter, the Eleventh Circuit held that the AC is "not required to provide a detailed rationale for denying review." Mitchell v. Comm'r Soc. Sec. Admin., 771 F.3d 780, 784 (11th Cir. 2014).[7] Thus the Eleventh Circuit has rejected Plaintiff's contention to the contrary. Furthermore, Plaintiff has not shown that Dr. De La Rosa's PRFC rendered the Commissioner's denial of benefits erroneous. *See* Ingram, 496 F.3d at 1262 ("[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous.").

In her January 30, 2013, PRFC Dr. De La Rosa opined that, with respect to walking, standing, and sitting, Plaintiff could be expected to tolerate each activity for less than one hour each in an eight-hour workday (tr. 442). Also, according to Dr. De La Rosa, Plaintiff could lift and carry less than five pounds occasionally; was restricted from climbing stairs or ladders and from bending; and was limited in fine and gross manipulation (*id.*). Her vision was blurred; her manual dexterity was impaired by bilateral paresthesias; and her ability to kneel was impaired by bilateral knee pain (tr. 442–43). Extreme hot and cold temperatures caused Plaintiff to be fatigued, and Plaintiff required rest periods every two hours of thirty minutes each (tr. 443). Plaintiff also suffered from

---

[6] In addition to Flowers, Plaintiff string-cites (with parentheticals omitted here) Russell v. Colvin, 2013 WL 6768331, at *9 (N.D. Fla. 2013); Bowden v. Comm'r of Soc. Sec., 2012 WL 2179119, at *8 (M.D. Fla. 2012); and Miller v. Astrue, 2011 WL 4502029, at *3 (M.D. Fla. 2011).

[7] The court went on to note that its "conclusion that the Appeals Council is not required to explain its rationale for denying a request for review is consistent with the holdings of other circuits that have considered this issue." *Id.* at 784–85 (citing Meyer v. Astrue, 662 F.3d 700, 705–06 (4th Cir. 2011); Taylor v. Comm'r of Soc. Sec., 659 F.3d 1228, 1232 (9th Cir. 2011); Martinez v. Barnhart, 444 F.3d 1201, 1207 (10th Cir. 2006); Higginbotham, 405 F.3d at 335 n.1).

depression and experienced sedation and fatigue as side effects of her medications. In Dr. De La Rosa's opinion, Plaintiff was disabled from full-time, continuous employment (*id.*).

Dr. De La Rosa, in large part, completed her PRFC by marking boxes on a pre-printed form. Pre-printed forms do not provide persuasive evidence of the validity of the opinions expressed therein. *See, e.g.*, Hammersley v. Astrue, No. 5:08cv245–Oc–10GRJ, 2009 WL 3053707, at *6 (M.D. Fla. Sept.18, 2009) ("check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions") (citing Spencer ex rel. Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985) (rejecting opinion from a non-examining physician who merely checked boxes on a form without providing any explanation for his conclusions)). Moreover, the PRFC does not explain the basis for Dr. De La Rosa's findings or opinion, including describing any medical signs or laboratory findings or providing any diagnostic information regarding Plaintiff's conditions. *See* 20 C.F.R. 404.1527(c)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion."). Additionally, as noted, new evidence submitted to the AC must clearly relate to the period on or before the date of the ALJ's decision. *See* Wilson, 179 F.3d at 1279. While it appears that Dr. De La Rosa's January 30, 2013, opinion likely is intended to relate to the time prior to issuance of the ALJ's opinion on October 12, 2012, there is no indication on the PRFC that it in fact does so. Furthermore, it appears that Dr. De La Rosa did not see, much less treat, Plaintiff for approximately seven months prior to issuing her PRFC in January 2013, as her records indicate she only treated Plaintiff through June 2012 (*see* tr. 438).

In addition, the clinical records from Dr. De La Rosa that Plaintiff cites (tr. 320–34; 347–60; and 430–37) do not support the findings or disability opinion in the PRFC.[8] Dr. De La Rosa's records indicate that Plaintiff presented with various complaints, including diabetes and anemia in February 2009 (tr. 326); diabetes, tingling, and blurred vision in August 2009 (tr. 325); tooth pain in February 2010 (tr. 334); hyperlipedemia, diabetes, depression, and a nasal blister in September 2010 (tr. 323, 324); bug bites in October 2010 (tr. 322); an abdominal infection in November 2010

---

[8] Although some of Dr. De La Rosa's handwritten clinical notes are very difficult to read, the court has made its best effort to decipher them.

Case No.: 3:14cv7/MCR/EMT

(tr. 321); hypertension and depression in January 2011 (tr. 348); diabetes, hyperlipidemia, hyperthyroidism, a urinary tract infection, blurred vision, depression, and back pain in August 2011 (tr. 434); diabetes, hyperlipidemia, blurred vision, and arm pain in December 2011 (tr. 433); and a cold in January 2012 (tr. 432). Dr. De La Rosa also saw Plaintiff in June 2012 for a follow-up examination (tr. 438).

With respect to complaints of pain, Dr. De La Rosa's treatment notes reflect that—on a pain scale of 1 to 10, with 10 being the most severe pain—Plaintiff reported severe pain in connection with a tooth extraction in February 2010 (tr. 334, pain level 10), a blister in September 2010 (tr. 324, pain level 4–8), and bug bites in October 2010 (tr. 322, pain level 10). All of these conditions for which Plaintiff reported the most severe pain were temporary and unrelated to Plaintiff's alleged disability. Plaintiff reported less severe pain related to her allegedly disabling neck and back conditions in February 2009 (tr. 326, pain level 7), shoulder condition in August 2009 (tr. 325, pain level 7), and right arm in September 2010 (tr. 323, pain level 8). At each of these visits, however, Dr. De La Rosa performed objective musculoskeletal examinations that she described as being within normal limits. Dr. De La Rosa also noted unremarkable musculoskeletal examinations in September 2010, October 2010, and November 2010 (tr. 321, 322, 323, 324). Plaintiff complained of severe lower back pain and shoulder pain in August 2011 (tr. 434, level 9), at which time Dr. De La Rosa noted an abnormal musculoskeletal examination; she did not, however, identify any limitations on range of motion or other specific findings (*id.*). Also, following the August 2011 visit—in December 2011 (tr. 433), January 2012 (tr. 432), and June 2012 (tr. 438)—Dr. De La Rosa again reported musculoskeletal examinations that were within normal limits. In January 2010 and November 2010 Plaintiff reported having no pain (tr. 432, pain level 0; tr. 321, pain level 0), and she reported having only moderate pain in January 2011 (tr. 348, pain level 5), December 2011 (tr. 433, pain level 4), and June 2012 (tr. 438, pain level 5).

As the foregoing indicates, Plaintiff reported severe pain in August 2011 and Dr. De La Rosa found pain signs at that time on examination that might support Plaintiff's complaints. The vast majority of Dr. De La Rosa's clinical records, however, do not support a finding of pain so severe

and persistent that it should be considered disabling, based either on Dr. De La Rosa's objective findings or Plaintiff's own subjective complaints.

Nor do Dr. De La Rosa's medical records reflect that Plaintiff's diabetes mellitus was disabling. In August 2011 Dr. De La Rosa reported that Plaintiff's endocrine system was not within normal limits (tr. 434), but her records prior to and following that date reflect that Plaintiff's endocrine system was within normal limits (*see* tr. 326 (February 2009); tr. 325 (August 2009); tr. 334 (February 2010); tr. 323, 324 (September 2010); tr. 322 (October 2010); tr. 321 (November 2010); tr. 348 (January 2011); tr. 433 (December 2011); tr. 432 (January 2012); and tr. 438 (June 2012)). The court could not locate any references in Dr. De La Rosa's records to end organ damage attributed to Plaintiff's diabetes mellitus, and it notes that in fact Plaintiff acknowledged to an SSA representative in December 2010 that her condition was stable on medication (tr. 198). Also, Plaintiff reported to examining physician, Richard W. Lucey, M.D., in January 2011 that she was unaware of any complications or end organ damage (tr. 336), although in March 2011 she did report some worsened vision attributed to her diabetes mellitus (tr. 220). Finally, the court could not locate any objective findings (or reports of subjective complaints) in Dr. De La Rosa's clinical records concerning Plaintiff's obesity, asthma, depressive disorder, or chronic obstructive pulmonary disease that would support the degree of limitations or disability opinion contained in Dr. De La Rosa's PRFC.

Not only do Dr. De La Rosa's own clinical records fail to support her PRFC, but also the PRFC is inconsistent with other substantial evidence that was before the ALJ and upon which he relied in denying Plaintiff's claim. This evidence includes (but is not limited to) Plaintiff's own reports, the report of examining physician John A. Dawson, M.D., and the reports of State non-examining consultants Debra Troiano, M.D., Mila Bacalla, M.D., and Jerda M. Riley, M.D. As to Plaintiff's own statements, although Dr. De La Rosa opined in the PRFC that Plaintiff could tolerate sitting for less than one hour (tr. 442), in December 2010 Plaintiff reported to an SSA representative that she had "no problems sitting" (tr. 199). In addition, Dr. De La Rosa's opinion that Plaintiff could sit for less than an hour is somewhat more restrictive than Plaintiff's own estimate, as she

indicated at the September 2012 administrative hearing, that she could sit for "an hour or *two*" (tr. 51) (emphasis added).

With respect to the reports of the examining and non-examining consultants, in May 2012 Dr. Dawson noted normal reflexes, some loss of sensitivity to pain in the right arm, and a non-antalgic gait (tr. 416). Dr. Dawson found that Plaintiff could hop, heel walk, toe walk, tandem walk, and stand on either leg (tr. 416–17). In addition, Plaintiff had full (5/5) strength in her upper and lower extremities (with some pain on elevating the right shoulder), and straight leg raise tests that were negative bilaterally (tr. 417). Also, Plaintiff could squat and bend and had only minor restriction in her lumbar range of motion and no restriction in her shoulder range of motion (tr. 417–18). Examination of the skin, chest, heart, vascular system, and abdomen was unremarkable (tr. 417). Manual strength and dexterity were normal, and Plaintiff displayed full range of motion of the fingers, wrists, elbows, and shoulders (*id.*). Range of motion of the lumbar and cervical spine was slightly diminished, but in the hips, knees, ankles, feet, and toes range of motion was full (tr. 418–19).[9] Plaintiff's vision was 20/25 in the left eye and 20/30 in the right eye, with peripheral fields intact to confrontation (tr. 416). Based on these findings, the ALJ gave significant weight to Dr. Dawson's assessment that Plaintiff could perform light work with occasional reaching overhead with the right hand and no climbing of ladders or scaffolds (tr. 28).

The ALJ also gave significant weight to Dr. Dawson's finding concerning Plaintiff's vision, as well as to the opinion of Dr. Riley, the State consultant, that Plaintiff's visual impairment was not severe (tr. 28–29). Citing Dr. Riley's findings, the ALJ noted that a January 2011 examination indicated that Plaintiff's visual acuities were not severely diminished with correction, and visual fields were intact, and that a February 2011 examination revealed that Plaintiff's vision was "20/20

---

[9] Another consultative examiner, Dr. Lucey, assessed Plaintiff in January 2011 (tr. 336–38), and obtained findings similar to Dr. Dawson's. According to Dr. Lucey, Plaintiff had a normal gait, and could heel, toe, and tandem walk without evidence of weakness (tr. 337). Plaintiff's range of motion in her back was "somewhat" diminished with the range of motion in the upper and lower extremities being otherwise normal, her fine manipulatory movements were normal, and her grip strength was normal (tr. 337). Plaintiff had a surgical scar over the right lower humerus and displayed subjective discomfort in this area (*id.*). Reflexes were normal. Straight leg raising tests were negative to full extension sitting and to 70 degrees supine (*id.*). Plaintiff's vision was 20/40 bilaterally when corrected with a pinhole, with visual fields intact (*id.*).

in the right eye and 20/20 in the left eye with the final diagnosis of only mild cataracts, 1+, no diabetic retinopathy and prior reference to glaucoma suspect" (*id.*).

Two non-examining State consultants, Dr. Troiano and Dr. Bacalla, opined Plaintiff could lift up to twenty pounds, stand or walk for six hours, sit for six hours in an eight-hour day, and had no manipulative limitations (tr. 401, 403, 412). While the ALJ did not accept the RFC assessments of Drs. Troiano and Bacalla in their entirety (*see* n.3, *supra*), the ALJ did give significant weight to their opinions that Plaintiff could perform light work with occasional crouching, no climbing of ladders, ropes, or scaffolds, and avoiding even moderate exposure to extreme cold, extreme heat, humidity, fumes, odors, dusts, gases, and poor ventilation (tr. 28).

Unlike in Flowers, the case on which Plaintiff relies, the PRFC evaluation in this case is not supported by significant clinical findings from the treating physician. Because Dr. De La Rosa's PRFC is not supported by her clinical records or the other record evidence just discussed, the court concludes that the PRFC would not reasonably affect the decision of the ALJ, who properly relied on the opinions of the examining and consulting physicians noted above. *See* Richardson v. Perales, 402 U.S. 389, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (report of consultative examiner may constitute substantial evidence supportive of a finding adverse to a claimant); Wainwright v. Comm'r of Soc. Sec. Admin., No. 06–15638, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007) (unpublished opinion) (where examining source's opinion is properly rejected, the Commissioner may rely on the opinions of non-examining state agency psychologists); Milner v. Barnhart, 275 F. App'x 947 (11th Cir. 2008) (unpublished opinion) (no error in giving substantial weight to opinions of non-examining psychologists where conflicting opinion of one-time examining physician is properly rejected). In short, the court concludes that even in light of the new evidence submitted to the AC, the ALJ's decision to deny benefits is supported by substantial evidence. As there is no reasonable possibility that Dr. De La Rosa's PRFC would change the administrative result, Plaintiff's claim that the AC erred in denying her request for review fails. *See* Kalishek v. Comm'r of Soc. Sec., 470 F. App'x 868, 871 (11th Cir. 2012) (finding opinions submitted after the ALJ's decision did "not render the ALJ's findings erroneous because the opinions were wholly conclusory and unaccompanied by any objective medical evidence"); Robinson v. Astrue, 365 F. App'x 993,

997 (11th Cir. 2010) ("[T]he Appeals Council was free to discount the treating physician's opinion . . . because that opinion was inconsistent with the physician's other assessments and with other substantial evidence.").

V.   CONCLUSION

For the foregoing reasons, the undersigned concludes that the Commissioner's decision is supported by substantial evidence and should not be disturbed.  42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d at1560.  Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, it respectfully **RECOMMENDED**:

That the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that the clerk be directed to close the file.

At Pensacola, Florida this 30th day of January 2015.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Any objections to these proposed recommendations must be filed within fourteen (14) days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**